Zimmerman, J.
This is an action in mandamus brought in this court wherein Clarence G-erspacher, a citizen and taxpayer of the city of Cleveland, “on behalf of himself and all other taxpayers in the state of Ohio similarly situated” seeks a writ of mandamus ordering the three members of the Industrial Commission of Ohio “to refund and pay to all of the contributors of said public employees’ fund of the Industrial Commission of the state of Ohio, all moneys collected by said Industrial Commission in excess of their premium requirements as provided by law.”
The amended petition contains the general statement and conclusion “that the various public corporate bodies, contributors to the public employees’ fund, are entitled to a refund from the Industrial Commission fund in an amount in excess of two million dollars * * * the exact sum being unkown to this relator, * * * which sum has been and is being withheld from *34 the contributors to said public employees’ fund in violation of the laws of the state of Ohio and of the rules promulgated by said commission and in derogation of the rights of this relator, a taxpayer.”
Such amended petition is met by an answer, which, after certain formal admissions, further admits that “the said Industrial Commission has been and is collecting premiums from the state, the cities, including the city of Cleveland, the townships, the incorporated villages and the school districts of the state of Ohio, as provided in Section 1465-59 of the General Code of Ohio, to provide compensation for injuries to the employees of said public corporate bodies as required by law.”
The answer then specifically denies that the public corporate bodies described have been or are paying into the public employees’ fund amounts in excess of their premium requirements; denies that such bodies are entitled to a refund in any amount or that any sum has been or is being unlawfully or wrongfully withheld from them; and denies generally all the material allegations of the amended petition not specifically admitted.
In conclusion, the answer sets forth two numbered defenses. In the first it is stated that the amended petition does “not state facts sufficient to constitute a cause of action,” and in the second it is alleged “that this court has no jurisdiction of the subject matter of this action.”
The controversy is submitted for decision upon the amended petition, the answer and certain stipulations, devoted largely to tabulations of figures showing the assets and liabilities on various dates of the Public Fund and Private Fund of the State Insurance Fund.
One factor which contributes to the problem involved is the failure of the General Assembly to make *35 appropriations of funds in advance to the Public Fund of the Industrial Commission in amounts sufficiently large to create an adequate reserve in connection with the allowed and allowable claims of injured state employees and the dependents of those killed. But, certainly, this court is lacking in power or authority to order the General Assembly to pursue a different course, although it should, in fairness, appropriate sufficient money to create proper reserves instead of providing only for current requirements as it has been doing.
Upon an examination of the record in the instant cause, the first question arising is whether the present action is properly maintainable as a class suit. There is no plain disclosure in the amended petition that all those the relator assumes to represent have such “a common or general interest” in obtaining or being entitled to what is sought as to bring the matter within the contemplation of Section 11257, General Code. See Davies v. Columbia Gas & Electric Corp., 151 Ohio St., 417, 86 N. E. (2d), 603.
But passing that difficulty, the Industrial Commission is a creature of statute. Its duly appointed members are state officfers, and in the exercise of their statutory functions are vested with broad discretion. Moreover, their actions within the field assigned to them are presumed to be in all respects valid and in the exercise of good faith and sound judgment. 32 Ohio Jurisprudence, 953, Section 93.
It also appears that recently the Industrial Commission, after a comprehensive audit and survey, ordered the distribution of more than $800,000 in surplus accumulations to public employers as authorized by Section 1465-55, General Code. This was accompanied by a material reduction in premium rates, still existing, which was determined to be consistent and in keep *36 ing with approved accounting and actuarial practice.
Because of the described refund of over $800,000 and the accompanying reduction in premium rates, which have materially altered the situation with respect to the Public Fund, the relator has abandoned the claim in his amended petition to a refund “in excess of two million dollars” and now maintains the refund should be in some indefinite smaller amount — somewhere near the one-half million dollars he contends the state owes the fund. Unfortunately, this changed aspect is of no assistance in resolving the difficulties and uncertainties which surround the problem.
It may fairly be assumed, we believe, that, when and if conditions warrant, the Industrial Commission in the exercise of its proper functions will return to public employers amounts they may have contributed in excess of actual requirements and adjust future premium rates correspondingly.
If such procedure is not followed, when and if it should be, and public employers of the classes described can show that fact by the requisite degree of proof, they may be in a position to pursue a remedy other than mandamus, the result of which would be to reduce premium payments within justified limits, taking into account the size of the accumulated reserve and other relevant factors.
The relator insists that this court should issue a writ of mandamus requiring the respondents now to make a further large distribution of funds for the benefit of those in whose behalf he claims to be acting. The respondents reply, with some supporting figures and calculations, that such an order, embracing an amount even approaching relator’s demands, would reduce the Public Fund of the State Insurance Fund to a dangerously low level and would imperil the adequacy of the remaining funds to provide for the payment of *37 compensation and death benefit awards. They assert, also, there is no justification or merit in the claim made by relator that the existing reserve is inordinately large and has been built up to its present proportions by excessive premiums collected from public employers.
Certain rules governing the issuance of a writ of mandamus are fundamental. It hardly seems necessary to observe that mandamus is an extraordinary legal remedy, the essential purpose of which is to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; and that, before the writ may properly issue, the relator’s right to the relief sought must be clear. The writ will not be issued in a doubtful case or where the effect of its issuance would be to control the discretion of the one against whom it would be directed.
Even though it be conceded that there may be some merit in relator’s claims, a substantial query exists in the minds of the members of this court concerning the form and scope of any writ which might be issued, and whether such writ, if issued in approximate conformity with relator’s request, would serve a desirable or beneficial public purpose.
The issuance of a writ of mandamus rests largely within the sound discretion of the court (State, ex rel. Mettler, Pros. Atty., v. Stratton et al., Commrs. of Athens County, 139 Ohio St., 86, 38 N. E. [2d], 393), and, since relator’s right to the writ is at least questionable and involves perplexing complications, the writ is denied.

Writ denied.

Weygandt, C. J., Middleton, Matthias and Hart, JJ., concur.